```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
NOEL LEVINE,                             :
                                         :
                    Plaintiff,           :
                                         :
        -v-                              :
                                         :   05 CIV. 3159 (DLC)
TORINO JEWELERS, LTD., GILI VATURI       :
a/k/a CILI VATURI, TIRAN SINAI, NIRIT    :   OPINION AND ORDER
SINAI a/k/a NIRIT KAIRI, NIRIT KAIRY     :
and NANCY SINAI, JOHN DOE(S) 1-20 AND    :
JANE DOE(S) 1-20,                        :
                                         :
                    Defendants.          :
                                         :
-----------------------------------------X
```

Appearances:

For Plaintiff:
Donald J. Kravet
Kravet & Vogel, LLP
36 West 44th St.
Suite 900
New York, NY 10036-8102

For Defendants:
Eric R. Levine
Eric P. Heichel
Eric Aschkenasy
Eiseman Levine Lehrhaupt & Kakoyiannis, P.C.
845 Third Avenue
New York, NY 10022

DENISE COTE, District Judge:

    Plaintiff Noel Levine ("Levine") brings this action against Torino Jewelers, Ltd. ("Torino") and several individuals associated with Torino, alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., as well as claims for fraud, aiding and abetting fraud and embezzlement, and unjust enrichment under New York law. The defendants have moved to dismiss the First Amended Complaint

("Complaint"). For the reasons stated below, defendants' motion is granted in part and denied in part.

Background

All claims are as alleged in the Complaint, unless otherwise noted. From 1996 through May 2003, Wendie Lauriola ("Lauriola") embezzled over $6 million from Levine. Levine is the owner of a real estate management company. In 1990, he hired Lauriola as the secretary and administrative assistant of the management company. In addition to her duties in managing the finances of the management company, Lauriola managed Levine's personal finances.

Lauriola, aided by her husband, Salvatore Lauriola, embezzled money from Levine by various means, including forging his name on checks drawn from his accounts. Levine was awarded a default judgment of more than $7 million against Lauriola and her husband in New York state court in 2003. In 2004, the federal government commenced a criminal proceeding against Wendie and Salvatore Lauriola. They pleaded guilty to bank fraud and were sentenced to 54 and 44 months' imprisonment, respectively. Plaintiff was able to recover an unspecified amount of the New York judgment by gaining title to real estate properties owned by the Lauriolas in South Carolina and Westchester County, New York, but represents that he has been able to recover "little" of the total funds embezzled by the Lauriolas.

Plaintiff alleges that, in a series of more than two hundred transactions, Lauriola made at least $1,107,290 in "purchases"

2

from Torino. Levine alleges that these transactions, many of which did not involve actual sales of jewelry, were part of a money laundering scheme facilitated by defendants Gili Vaturi ("Vaturi"), Tiran Sinai, and Nirit Sinai.[1] According to plaintiff, Torino would charge Lauriola's credit cards, purportedly for jewelry purchases, and Lauriola would pay the credit card companies with checks drawn directly on Levine's accounts or with checks drawn on her own account, which contained money embezzled from Levine. Defendants would retain a percentage of the proceeds and transfer the balance to Lauriola in cash. Defendants fabricated bogus invoices to create the appearance that the transactions were legitimate.[2] Levine further alleges that "[a]s additional or alternative consideration for her role, the defendants on occasion provided . . . Lauriola with assorted items of jewelry," In addition, Lauriola paid Vaturi and Nirit Sanai personally for their participation in the scheme with personal checks. Levine alleges that the defendants "were aware that the monies . . . Lauriola used to pay the credit card 'purchases' were actually plaintiff's

---

[1] Vaturi and Nirit Sinai are each 50 percent shareholders of Torino.

[2] Levine cites as evidence that the invoices were bogus the fact that some of the invoices lack invoice numbers, or bear invoice numbers that are "haphazardly sequenced"; that none of the invoices identify the name of the purchaser; that the pre-tax number amounts on the invoices are unusual (e.g., $18,818.18); that all or nearly all of the invoices reflect inaccurate sales tax calculations; that the "vast majority" of the credit card slips lack signatures, and that some of the invoices reflect large purchases made in installments over an extended period of time.

3

embezzled funds obtained by . . . Lauriola by virtue of her active engagement in forging plaintiff's signature on his checks."

On March 23, 2005, Levine filed this action, alleging RICO and New York state law claims against the defendants. On July 15, 2005, plaintiff amended his Complaint. Levine's amended Complaint alleges that Torino is an "enterprise" within the meaning of the RICO statute, and that Vaturi, Tiran Sinai and Nirit Sinai are each a "person" under the statute. Levine contends that Vaturi, Tiran Sinai, and Nirit Sinai each committed multiple related acts of laundering of monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and that the scheme was open-ended by nature. He also pleads a claim of conspiring to violate the RICO statute, 18 U.S.C. § 1962(c), against Vaturi, Tiran Sinai, and Nirit Sinai. Levine brings New York state law claims of fraud, aiding and abetting fraud and embezzlement, and unjust enrichment against Vaturi, Tiran Sinai, and Nirit Sinai, and constructive fraud and actual fraud under New York Debtors and Creditors Law §§ 273 and 276 against all defendants. Levine also brings a claim for attorneys' fees under New York Debtors and Creditors Law § 276-a against all defendants.

Defendants move to dismiss on a number of grounds. They contend that Levine lacks standing to assert a RICO claim. They challenge the sufficiency of his allegations supporting both the substantive RICO charge and the RICO conspiracy charge. They also contend that, if the RICO claims are dismissed, the Court

4

should decline to exercise supplemental jurisdiction over the state law claims. In the alternative, defendants move for dismissal of the state law claims on various substantive grounds.

Discussion

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed. R. Civ. P. The purpose of this requirement is to give fair notice of a claim and the grounds upon which it rests so that the opposing party may identify the nature of the case, respond to the complaint, and prepare for trial. Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002). Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, and therefore is "not meant to impose a great burden upon a plaintiff." Dura Pharms., Inc. v. Broudo, 544 U.S. __, __, 125 S.Ct. 1627, 1634 (2005). "The complaint thus need not set out in detail the facts upon which the claim is based." Twombly v. Bell Atlantic Corp., 425 F.3d 99, 107 (2d Cir. 2005) (citation omitted). If it is clear, however, that "no relief could be granted under any sets of facts that could be proved consistent with the allegations," the claim should be dismissed. Swierkiewicz, 534 U.S. at 514. In construing the complaint, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

I. RICO Claims

The RICO statute makes it unlawful

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "[R]acketeering activity" covers specified felonious activities, including violations of 18 U.S.C. § 1956, which prohibits the laundering of monetary instruments. 18 U.S.C. § 1961. In addition to criminal penalties, the RICO statute provides for civil remedies that may be pursued by any person "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

Defendants argue that plaintiff's RICO claim must be dismissed because (1) he lacks standing, (2) he does not adequately allege predicate acts of money laundering, (3) his allegations do not amount to a "pattern of racketeering activity," (4) he does not describe acts constituting "participation" in the enterprise by any defendant, and (5) he fails to allege a RICO enterprise that is distinct from the RICO persons named as defendants in the Complaint.

A. Standing

In order for someone "injured in his business or property by reason of a violation of section 1962" to have standing to bring a claim under the RICO statute, the "plaintiff must plead, at a minimum, (1) the defendant's violation of § 1962, (2) an injury

to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003)(citation omitted). The causation requirement of RICO standing "is satisfied if the defendant's injurious conduct is both the factual and the proximate cause of the injury alleged." Id. (citing Holmes v. Sec. Investor Protection Corp., 503 U.S. 258, 268 (1992)). Although proximate cause is not susceptible to precise definition, our Circuit has repeatedly noted that the rule limits a defendant's liability to those plaintiffs "with respect to whom [defendant's] acts were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence." Ideal Steel Supply Corp. v. Anza, 373 F.3d 251, 257 (2d Cir. 2004)(citation omitted).

The extent to which participants in a plot that involves both theft and money laundering (or other acts of concealment) can be held civilly liable to a victim under RICO based solely on their involvement in the laundering aspect of the scheme is not settled in this Circuit. Here, the defendants claim that Levine's injuries were caused not by the alleged money laundering, but by Lauriola's embezzlement of plaintiff's funds. Therefore, they suggest, Levine does not sufficiently plead proximate causation. They point to cases in which a defendant's action has been held not to proximately cause an injury simply because it "furthers, facilitates, permits or conceals an injury

7

that happened or could have happened independently of the act." Vicon Fiber Optics Corp. v. Scrivo, 201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002). The defendants also suggest that courts are reluctant to impose RICO liability when the predicate acts occurred <u>after</u> the injury to plaintiff. See, e.g., Simon v. Weaver, 327 F. Supp. 2d 258, 261 (S.D.N.Y. 2004)(dismissing a RICO claim because the events that caused plaintiffs' injury occurred before defendants were involved in the alleged scheme).

Contrary to defendants' suggestion, however, courts have not drawn a clear line between acts of proximate causation that precede an injury and acts of "mere[]" concealment that follow it. Indeed, some courts in this Circuit have ruled that the latter type of action <u>can</u> confer RICO liability on a defendant. See, e.g., Mezzonen v. Wright, No. 97 Civ. 9380 (LMM), 1999 WL 1037866, at *6 (S.D.N.Y. Nov. 16, 1999)(holding that plaintiff adequately stated claims against defendants based on concealment of fraud); and American Arbitration Ass'n, Inc. v. DeFonseca, No. 93 Civ. 2424 (CSH), 1996 WL 363128, at *6 (S.D.N.Y. June 28, 1996)(holding that both embezzlement and money laundering were "integral to [the] success" of defendants' scheme, and that involvement in either one could form the basis of RICO liability).

Here, plaintiff alleges that Lauriola and defendants were partners in a scheme that involved both embezzlement and money laundering. Levine has enumerated specific acts, such as the creation of bogus invoices and the processing of credit card

8

payments, that he claims were "essential to [] the overall scheme to embezzle plaintiff's funds." It is at least conceivable that defendants' actions assisted Lauriola in covering her tracks and thereby helped her steal more from plaintiff than she otherwise would have. If this is true, then defendants' acts would have been "a substantial factor in the sequence of responsible causation," and plaintiff's injury would have been "reasonably foreseeable or anticipated as a natural consequence." Ideal Steel, 373 F.3d at 257. Whether or not plaintiff can prove that defendants' actions proximately caused his losses is an issue for a later date. Levine's allegations regarding causation are sufficient to confer standing to bring a RICO claim against defendants.

B. Predicate Acts of Money Laundering

To recover under the RICO statute, a plaintiff must show that defendants engaged in "racketeering activity" 18 U.S.C. § 1961(5), which is defined to include violations of the federal money laundering statute. The statute provides, in relevant part:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity --
>
> ...
>
> (B) knowing that the transaction is designed in whole or in part --

>    (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
>
>    (ii) to avoid a transaction reporting requirement under State or Federal law,
>    shall be sentenced to a fine ... or imprisonment.

18 U.S.C. § 1956.

Defendants claim that plaintiff does not sufficiently allege acts of money laundering because he fails to "establish" that the transactions in question were undertaken for the purpose of concealing the nature, location, source, ownership, or the control of the illegally acquired proceeds. But this overstates plaintiff's burden. In order to survive a motion to dismiss, the complaint must simply make allegations that, if true, would <u>allow</u> a fact-finder to deem defendant liable for plaintiff's injury; it need not, however, show that no other interpretation of the facts is possible.[3]

Here, plaintiff alleges that defendants created phony invoices for jewelry purchases that Lauriola never made; that they charged Lauriola's credit card for these purchases; that Lauriola paid the credit card bills with embezzled funds; and that, after keeping a share of the money, defendants funneled the proceeds the fraudulent transactions back to Lauriola. If true,

---

[3] Moreover, contrary to defendants' assertion, the heightened pleading requirements of Rule 9(b) do not apply to claims of money laundering; they apply "only to claims of fraud or mistake." <u>McLaughlin v. Anderson</u>, 962 F.2d 187, 194 (2d Cir. 1992). "Accordingly, the money laundering allegations are assessed under the less stringent 'notice pleading' requirements of Rule 8(a)." <u>Madanes v. Madanes</u>, 981 F.Supp. 241, 253 (S.D.N.Y. 1997).

these facts are consistent with a scheme to "conceal or disguise" the funds Lauriola embezzled from plaintiff.

C. Continuity

The RICO statute defines "pattern of racketeering" to require "at least two acts of racketeering activity, ... the last one of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The Supreme Court explained in H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989), that, in order to meet the "pattern" requirement, the racketeering predicates must be "related and ... amount to or pose a threat of continued criminal activity." 492 U.S. at 239. In other words,

> a plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time).

GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995)(citation omitted).

Here, plaintiff's Complaint sufficiently alleges the existence of a closed-ended pattern.[4]  Although there are no hard-and-fast rules for the length of time over which a pattern of racketeering must extend in order to fall within the statute, the Second Circuit has suggested that two years "may be the <u>minimum</u> duration necessary to find closed-ended continuity."

---

[4] Because the Complaint sufficiently alleges a closed-ended pattern of racketeering activity, it is unnecessary to reach plaintiff's argument that he alleges an open-ended pattern.

First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004). Levine's allegation of nearly 200 predicate acts extending over a six-and-a-half-year period far surpasses this guideline.

Defendants argue that factors other than the duration of the alleged acts can affect a court's determination of whether closed-ended continuity exists. While it is true that "other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant," id., the point of the continuity requirement is not to bind a court to a rigid formula, but to ensure that there is a basis for concluding that "defendants' activities were neither isolated nor sporadic." GICC, 67 F.3d at 467 (citation omitted). Levine's allegations provide the Court with such a basis.

D. Participation of Individual Defendants

For liability under the RICO statute to arise, a defendant must have "conduct[ed] or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). In Reves v. Ernst & Young, 507 U.S. 170 (1993), the Supreme Court explained that

> the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required.

507 U.S. at 179. The Court adopted the "operation or management" test to determine whether a defendant's participation is sufficient to confer liability. "Simply put, one is liable under RICO only if he participated in the operation or management of the enterprise itself." First Capital, 385 F.3d at 176 (citation omitted). The Second Circuit has described the test as "a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." Id. (citation omitted).

In the present case, Levine's Complaint clears this "low hurdle." Plaintiff alleges that Vaturi, Nirit Sinai, and Tiran Sinai were each "officers, directors, and/or shareholders" in Torino Jewelers, which the Complaint identifies as the RICO enterprise. As such, they would have sufficiently participated in the operation and management of Torino to be held liable under the RICO statute.[5]

E. Distinctness

The Supreme Court has endorsed the "basic principle that to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). The Second Circuit has elaborated on this

---

[5] Defendants' further objection that plaintiff has failed to meet his pleading burden because he alleges that each individual defendant engaged in "exactly the same" conduct is unavailing. Although plaintiff must allege that each defendant individually violated the money laundering statue, there is no reason that he has to allege that each did so in a different way.

13

concept, stating that, "by virtue of the distinctness requirement, a corporate entity may not be both the RICO person and the RICO enterprise." Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339, 344 (2d Cir. 1994).

Here, plaintiff alleges that Torino is the RICO "enterprise." Although he does not explicitly state that Torino is also a "person," he does so implicitly by bringing the RICO claim against Torino. Because Torino is identified as the RICO "enterprise," it cannot also be a RICO "person." Therefore, the RICO claim is dismissed as to Torino.

II. Other Claims

Because the federal RICO claim is sustained as to defendants Vaturi, Tiran Sinai, and Nirit Sinai, and the scope of discovery will not be greatly affected by the existence of the RICO conspiracy claim or the state law claims, the defendants' motion to dismiss those claims is denied. Pursuant to 28 U.S.C. § 1367, which allows a federal court to exercise supplemental jurisdiction over claims "that are so related to claims" within the court's original jurisdiction "that they form part of the same case or controversy," the Court will maintain jurisdiction over the remaining claims against Torino.

Conclusion

For the foregoing reasons, defendants' motion to dismiss the RICO claim against Torino is granted. Defendants' motions to

dismiss the RICO claim against the remaining defendants, and the remaining claims against all defendants, are denied.

SO ORDERED:

Dated: New York, New York
March 22, 2006

                                              DENISE COTE
                               United States District Judge